## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF
## TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| **ZERRIC L. WILLIAMS** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | CIVIL  ACTION NO. _____ |
| | § | |
| **LOUIS DEJOY, Postmaster General,** | § | |
| | | |
| **UNITED STATES POSTAL SERVICE,** | § | |
| **Defendant.** | § | <u>**JURY TRIAL DEMAND**</u> |

---

## <u>PLAINTIFF'S ORIGINAL COMPLAINT</u>

---

**TO THE HONORABLE JUDGE OF SAID COURT**:

COMES NOW, Plaintiff, Zerric L. Williams, files these claims against Defendants, Louis DeJoy, Postmaster General of the United States Postal Service, and United States Postal Service, would respectfully show unto the Court the following:

### I.    <u>PREMILINARY STATEMENT</u>

Plaintiff Zerric L. Williams (hereinafter "Williams") has been employed by the Defendant, United States Postal Service from June 2016 to present.    Williams was and continues to be the victim of racially discriminatory actions from his immediate supervisor Larry Moore from his start date at the Seabrook Texas location of the United States Postal Service in July 2019 to present.   Williams has suffered through verbal abuse,

threatening behavior, intimidation, unequal treatment, embarrassment and degrading behavior that no human being should be subjected to from his employer.

Williams has suffered emotional, physical and financial injuries as a result of the racially discriminatory behavior he received at the hands of the Defendants

## II.    PARTIES

1.     Plaintiff, Zerric L. Williams, an individual, was a domiciled resident and has continuously been a citizen of the State of Texas.    Williams was  a domiciled resident of Galveston County at the time the claims relevant to this cause made herein occurred and is currently a domiciled and a resident of Fort Bend County, Texas.    Williams was employed by the United States Postal Services (hereinafter "USPS") started June 2016 and he is still employed with the USPS.

2.     Defendant, Louis Dejoy, is the Postmaster General of the United States Postal Service ("USPS") and is the authorized agent to accepts lawsuits on behalf of the USPS, and may be served with process by addressing service to Louis Dejoy, Postmaster General, USPS, 475 L'Enfant Plaza S.W., Washington, DC 20250-2200.

3.     Defendant the United States Postal Service ("USPS") is an agency of the United States of America and the authorized agent to accepts lawsuits on behalf of the USPS is Louis Dejoy, Postmaster General, who may be served with process by addressing service to Louis Dejoy, Postmaster General, USPS, 475 L'Enfant Plaza S.W., Washington, DC 20250-2200.

### III.    JURISDICTION AND VENUE

4.      The Court has jurisdiction over this lawsuit according to 28 U.S.C. § 1331, because the action arises under Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000e-5(f)(3), *et. seq.*  The jurisdiction of this Court is invoked to secure protection of, and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive and other relief for illegal discrimination in employment.

5.      Venue is appropriate in this Court under 28 U.S.C. § 1391(b) because the claims alleged arose in Seabrook, Harris County, Texas, located in the Southern District of Texas, Houston Division.

6.      This Complaint arises pursuant to the 42 U.S. Code §1983.   This court has jurisdiction over Plaintiffs' claim under 28 U.S.C. §1331 (federal question) and under 28 U.S.C. §1343(3) (civil rights).

7.      The Court also has jurisdiction under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.  Prior to filing this civil action, Plaintiff duly filed charges of discrimination and retaliation concerning the claims complained of herein with the USPS through the Equal Employment Opportunity Commission (the "Agency").  The Agency has rendered its Final Agency Decision documented on February 10, 2021, which provided Plaintiff with his notice of right to sue Defendant in Federal District Court within ninety (90) days of his receipt of said decision.   Plaintiff has sufficiently exhausted all administrative remedies

and requirements and is bringing this civil action within ninety (90) days of the documented date of tender of the Final Agency Decision in this matter as is required.

## V. <u>NATURE OF THE ACTION</u>

8.     This action is brought under the 28 U.S.C. § 1331, because the action arises under Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000e-5(f)(3), *et. seq.,* 28 U.S.C. § 1391(b), 42 U.S. Code §1983, 28 U.S.C. §1331 (federal question) and under 28 U.S.C. §1343(3) (civil rights).   The Court also has jurisdiction under 28 U.S.C. § 1332.

9.     Plaintiff seeks back pay, compensatory and/or general damages, incidental and/or special damages, exemplary damages, and attorney's fees, as well as a declaratory judgment and injunction to restrain defendant employer from committing prohibited personal practices, policies, customs and usages, from discriminating and retaliating against Plaintiff and other employees of the USPS based upon his race and opposition to unlawful discrimination, harassment, and retaliation. FACTS

10.     Plaintiff has been employed by Defendant USPS since June 2016.

11.     Plaintiff is African-American, Black, and belongs to a class protected under the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* first as a city carrier (CCA) from June 2016 to February/March 2017 in Maricopa County, Arizona, then transferring to Galveston County, Texas and staying there from February/March 2017 through June 2017.   Williams was then transferred to Seabrook, Harris County from July 2017 until present.  Williams was promoted to Relief Supervisor beginning July 2019 until present, at the Seabrook, Harris County USPS locations.

12.     Defendants have intentionally discriminated against Williams based upon his race as a "African American" in violation of the Title VII Civil Rights Act 42 U.S.C. § 2000e-5(f)(3), *et. seq.* by treating Williams disparately from his co-workers of other races and nationalities similarly situated.

13.     Williams filed several EEOC complaints with the first complaint being filed on November 13, 2017, USPS case number 4G-770-0032-18 against his postmaster Larry Moore (hereinafter "Moore").     The second complaint against postmaster Larry Moore was filed before February 2018, USPS case number 4G-770-129-18.   The third compliant filed against postmaster Larry Moore was filed before August 2018, USPS case number 4G-770-0196-18.  Williams filed a fourth complaint, 4G-770-0339-18 against postmaster Larry Moore on August 23, 2018, which is the basis of this lawsuit.   These three complaints were referred to mediation where there was a settlement agreement reached through the EEOC process.

14.     Williams was not advised of his right to have an attorney through the three compliant and mediation processes.   Williams was further discriminated against as a result of the mediation process.  Williams was directed to go through retraining and educational courses when in reality he was victim of the discrimination and not the perpetrator.

15.     Williams filed a fourth complaint, 4G-770-0339-18 against postmaster Larry Moore on August 23, 2018, which is the basis of this lawsuit.

16.     Williams was relentlessly and outrageously retaliated against by said postmaster with unjust disciplinary actions without merit, including, as follows:

a.  On November 13, 2017, in an act of pure harassment and  retaliation, Moore jumped on the back of Williams' his mail truck, also known as a life-long vehicle (LLV) and threw all of Williams' parcels out of the LLV.  Moore then told Williams to load it back the way Williams had it at first, including the parcels that Moore had thrown to the ground. The humiliation from this unrestrained, barbaric harassment and retaliation was extremely emotionally distressing and intolerable for Williams, making his work environment even more toxic and hostile.   This incident further cause injury and harm to Williams.

b.     On August 23, 2018, in an act of harassment and retaliation for Williams' prior EEOC complaints, Moore again stalked Williams on his route, going to where he was and left Williams' LLV door wide open while Williams was on his route.   Then Moore had the heinous audacity to accuse Williams of not locking the LLV while Williams was performing his walking route. Williams took a 10-minute break when Moore appeared and called his union representative complaining of Moore stalking him.  Moore has the spare key for the vehicle and opened the vehicle in an attempt to set up Williams and get him in trouble.    Moore then had Williams written up and suspended the next day, August 24, 2018, for leaving the vehicle open and unsecured.  Coincidentally,

Williams had been asking for a CA2 form for occupational disease and illness to file for long term disability, as Williams was already seeing psychiatrist and psychologist from Moore's harassment.   On August 24, 2018, Williams had requested the CA2 form again for the third time, when Moore's response was to have him written up and suspended at the end of the workday.

   c. On September 21, 2018, Moore accused Williams of charging him on the work floor from three feet away, when in reality Moore was standing inches behind Williams.

   d.      On September 26, 2018, Moore accused Williams of pushing Moore's office door on Moore after Williams went into Moore's office to turn in Williams' 3996 form; form 3996 is used to report and request overtime.   In act of retaliation, Moore never gave Williams a copy of the form.   Williams believes that Moore was retaliating against Williams because of many internal complaints and the EEO complaints that Williams has filed against Moore. Moreover, Williams was the whistle blower who informed the USPS that Moore was forcing postal carriers at the Seabrook location to work off the clock, without pay.   Moore was well aware of that when he falsely accused Williams of attempting to push Moore's office door on Moore.   Moore knew that the allegation could lead to Williams' termination and removal from the postal Service.

e. On October 4, 2018, in a retaliatory adverse employment action,  Moore issued a 7-day suspension against Williams, allegedly for attempting to push the office door on Moore and failing to file instructions.   Williams had filed form 1767 against Moore for safety condition hazards, the same day that Moore issued the 7-day suspension.

f. On October 6, 2018, Moore again refused to sign Williams'  3996 form and 1571 form which reports curtailment, before Williams left the station to begin his route.   This was harassment and retaliation due to Williams'  past internal complaints and  EEOC complaints against Moore.   Again, on October 6, 2018, Moore refused to issue the CA-1 form for Williams as he had been requesting.

g.        On October 9, 2018, Williams was again retaliated against, harassed and subjected to a hostile work environment because of crossing craft, having rural carriers to deliver Williams' mail, which effectively cut Williams from his work, causing him to clock out early and loose pay. Williams maintains that Moore would have Williams' route cased up before Williams would clock in by another carrier working off the clock.   In response to Williams'  complaints about other carriers working off of the clock, Priya Amin (Williams'  immediate supervisor) gave two announcements in 2018 that postal carriers were no longer to case off the clock and must be clocked into case the mail.

h.        November 14, 2018,  Moore also refused to give Williams a  form 13 in which Williams was requesting to file a grievance. Moore refused to sign it after

Williams gave it to Moore to read.  That day Moore yelled at Williams in front of the other postal workers for some trivial matter or another, which was humiliating for Williams and further contributed to Williams' toxic, and unbearably hostile work environment.  Moore harassed him all day, causing Williams' injury and harm.

   i. November 19, 2018,  Williams'  route was again cased before Williams arrived at work and clocked in.   The  other postal workers who were casing Williams' route were working off the clock.   In an act of harassment and retaliation, Moore refused to authorize Williams'  3996 form before Williams left the station.

   j. December 21, 2018, Moore retaliated against Williams by provoking and pestering him about what was discussed in a mediation conducted on December 14, 2018. .  Moore accused Williams of discriminating against Moore because Moore is white, because Williams was not filing grievances against anyone else, just Moore.

   k.      January 7, 2019,  Moore was provoking Williams at the station, and began to walk toward Williams in an aggressive and menacing manner as if Moore were going to physically attack Williams by getting in his face and yelling at him.   Moore's menacing and aggressive stance frightened Williams and caused Williams, who was in the middle of working his route, to have an anxiety attack and drop all the outgoing mail on the ground as Moore stood there in a

threatening posture glaring at Williams. This is but another example of the extreme and abusive hostile work environment and retaliation that Plaintiff has sustained.

l. On February 25, 2019, in a move of pure harassment and retaliation, Moore scheduled Williams to work overtime on his normal day off, February 5, 2019, without first notifying Williams that he in fact was on the schedule to work that day.  This situation went as for as an investigative interview.   During the interview, Williams repeatedly told Moore that he was not informed that he was scheduled to work, as it was his normal day off.  Moore then lied stating  that Priya Admin, Williams' immediate supervisor, told Williams to work on February 5, 2019 when in fact she never did because she was on vacation. Nevertheless, Williams received a seven (7) day suspension from Moore for failing to report to duty on February 5, 2019, Williams' normal day off.  This is another clear example of Moore's harassment and retaliatory actions against Plaintiff and violation of Williams civil rights and rights as an employee of the USPS.

m.        On March 6, 2019, Moore again refused to give Williams form 3996, after Williams had politely requested same.  Then in a retaliatory move designed to frighten, intimidate, threaten, and embarrass Williams, Moore suddenly walked away from Williams, who had to follow Moore, and Moore slapped a cord hanging from the ceiling as Williams walked away, causing the cord

hanging from the ceiling to swing in a dramatic fashion that resembled a noose, as the cord was tied in the middle formed a circle, similar to a hangman's noose. This caused Williams to become petrified and experience extreme emotional distress and mental anguish.   As such, Williams believed that Moore was becoming more and more threatening with Moore's unabated and unrestrained retaliation and harassment, causing Williams fear that Moore will one day take this abusive harassment and retaliation to the next level.  Hurt and humiliated, with severe anxiety and emotion distress, Williams requested leave for the remainder of the day.  Moore then loudly announced to the other carriers at the station that Williams did not want to help them, that Williams was leaving, yelled out that "we have another route to cover."  Williams filed the appropriate form to leave and clocked out, with Moore shadowing Williams's every step. This is but another shocking example of Moore's unabated and unchecked racial prejudice, relentless hostility, harassment, deliberate retaliation, and violation of Williams's civil rights and rights as an employee of the post office.

n.      On February 17, 2021, in another example of retaliation and harassment Williams was not paid for the Act of Nature Leave for the recent ice/snowstorm in Harris and surrounding counties, even after operations approved administrative pay for every other postal worker in the area.  Williams showed up to work as requested on February 17, 2021, and signed in a list and a group text message during the time as power was off.   Also, Moore's

replacement is still harassing Williams, continuing with the harassment started by Moore, despite that Moore no longer works for the USPS station in Seabrook.

o.      On Thursday, February 25, 2021, Larry Moore called the station after hours at around 5:00 p.m.   Moore is aware that Williams, as the closing supervisor,  closes the office on Thursdays and that Williams is on the phone returning online inquiries phone calls around closing time.   Moreover, ever since the Agency issued its Final Decision in Williams's EEOC actions before that tribunal, Williams is now being harassed and tormented by supervisor Priya Amin and replacement Postmaster Anthony Jones on a daily basis. Hence, the hostile work environment and reprisals against Williams are allowed to continue without intervention or any relief provided by defendant USPS.

p.       Defendants did refuse Williams' requests for overtime, refused to provide Williams with the necessary forms to document his work, giving Williams' work away, and leaving him with an overload of mail to deliver. Defendants prevented Williams from delivering mail by curtailing the mail, in an attempt to get Williams in trouble on the grounds of failure to follow instructions.   The overload of mail that was  not been delivered was then given to other postal carriers, intentionally creating overtime for those carriers. All of these actions were done in an attempt not only to get Williams in trouble, but also to force him to take a leave without pay.     The continual actions of the Defendants created a hostile work environment, anxiety and stress for Williams

which caused him to take time off from his work, using all of his vacation and sick leave.  All of these actions of Defendant created an unbearably toxic and hostile work environment, causing serious injury and harm to Williams.

q.      Late summer 2018,  Williams suffered a wrist injury when Moore refused to allow Williams to put down his scanner, and then forced him to pick up mail and heavy boxes while holding the scanner.   Then Moore refused to allow Williams medical treatment for his wrist injury.  Moore refused to provide a CA1 to Williams for his wrist injuries.    It took Williams filing his first grievance to find out that Moore had never sent in the CA1 forms in to be issued.

r. On September 21, 2018, Moore accused Williams of charging him on the work floor from three feet away, when in reality Moore was standing inches behind Williams.

s. On September 26, 2018, Moore accused Williams of pushing Moore's office door on Moore after Williams went into Moore's office to turn in Williams' 3996 form; form 3996 is used to report and request overtime.    In act of retaliation, Moore never gave Williams a copy of the form.  Williams believes that Moore was retaliating against Williams because of many internal complaints and the EEO complaints that Williams has filed against Moore. Moreover, Williams was the whistle blower who informed the USPS that Moore was forcing postal carriers at the Seabrook location to work off the clock, without pay.  Moore was well aware of that when he falsely accused Williams of

attempting to push Moore's office door on Moore.   Moore knew that the allegation could lead to Williams'  termination and removal from the postal Service.

t. On October 4, 2018, in a retaliatory adverse employment action,  Moore issued a 7-day suspension against Williams, allegedly for attempting to push the office door on Moore and failing to file instructions.   Williams had filed form 1767 against Moore for safety condition hazards, the same day that Moore issued the 7-day suspension.

u.     On October 6, 2018, Moore again refused to sign Williams'  3996 form and 1571 form which reports curtailment, before Williams left the station to begin his route.   This was harassment and retaliation due to Williams'  past internal complaints and  EEOC complaints against Moore.   Again, on October 6, 2018, Moore refused to issue the CA-1 form for Williams as he had been requesting.

v. On October 9, 2018, Williams was again retaliated against, harassed and subjected to a hostile work environment because of crossing craft, having rural carriers to deliver Williams' mail, which effectively cut Williams from his work, causing him to clock out early and loose pay. Williams maintains that Moore would have Williams' route cased up before Williams would clock in by another carrier working off the clock.  In response to Williams'  complaints about other carriers working off of the clock, Priya Amin (Williams'  immediate supervisor)

gave two announcements in 2018 that postal carriers were no longer to case off the clock and must be clocked into case the mail.

w.      Prior to November 5, 2018, Moore raced up to Williams' mail truck while he was delivering mail and Moore blocked the street so that no cone could pass either of their vehicles.   Williams took medical leave after this incident.

x. November 5, 2018, Williams attempted to go back to work but Moore refused to allow him back stating that Williams needed full clearance without restrictions.   Moore rejected Williams' doctor's release stating that Williams' doctor needed to specifically state that he was completely released from his care without limitations.   Williams' has to get his union representative involved to get his release back to work accepted by Defendants.

y. November 14, 2018,  Moore also refused to give Williams a  form 13 in which Williams was requesting to file a grievance.  Moore refused to sign it after Williams gave it to Moore to read.  That day Moore yelled at Williams in front of the other postal workers for some trivial matter or another, which was humiliating for Williams and further contributed to Williams'  toxic, and unbearably hostile work environment.  Moore harassed him all day, causing Williams' injury and harm.

z. November 19, 2018,  Williams'  route was again cased before Williams arrived at work and clocked in.   The  other postal workers who were casing Williams' route were working off the clock.  In an act of harassment and

retaliation, Moore refused to authorize Williams' 3996 form before Williams left the station.

aa.      December 21, 2018, Moore retaliated against Williams by provoking and pestering him about what was discussed in a mediation conducted on December 14, 2018.  Moore accused Williams of discriminating against Moore because Moore is white, because Williams was not filing grievances against anyone else, just Moore.

bb.      January 7, 2019,  Moore was provoking Williams at the station, and began to walk toward Williams in an aggressive and menacing manner as if Moore were going to physically attack Williams by getting in his face and yelling at him.   Moore's menacing and aggressive stance frightened Williams and caused Williams, who was in the middle of working his route, to have an anxiety attack and drop all the outgoing mail on the ground as Moore stood there in a threatening posture glaring at Williams. This is but another example of the extreme and abusive hostile work environment and retaliation that Plaintiff has sustained.

cc.      On February 25, 2019, in a move of pure harassment and retaliation, Moore scheduled Williams to work overtime on his normal day off, February 5, 2019, without first notifying Williams that he in fact was on the schedule to work that day.  This situation went as for as an investigative interview.   During the interview, Williams repeatedly told Moore that he was not informed that he

was scheduled to work, as it was his normal day off.  Moore then lied stating that Priya Amin, Williams' immediate supervisor, told Williams to work on February 5, 2019 when in fact she never did because she was on vacation. Nevertheless, Williams received a seven (7) day suspension from Moore for failing to report to duty on February 5, 2019, Williams' normal day off.  This is another clear example of Moore's harassment and retaliatory actions against Plaintiff and violation of Williams civil rights and rights as an employee of the USPS.

   dd.      On March 6, 2019, Moore again refused to give Williams form 3996, after Williams had politely requested same.  Then in a retaliatory move designed to frighten, intimidate, threaten, and embarrass Williams, Moore suddenly walked away from Williams, who had to follow Moore, and Moore slapped a cord hanging from the ceiling as Williams walked away, causing the cord hanging from the ceiling to swing in a dramatic fashion that resembled a noose, as the cord was tied in the middle formed a circle, similar to a hangman's noose. This caused Williams to become petrified and experience extreme emotional distress and mental anguish.   As such, Williams believed that Moore was becoming more and more threatening with Moore's unabated and unrestrained retaliation and harassment, causing Williams fear that Moore will one day take this abusive harassment and retaliation to the next level.  Hurt and humiliated, with severe anxiety and emotion distress, Williams requested leave for the

remainder of the day.  Moore then loudly announced to the other carriers at the station that Williams did not want to help them, that Williams was leaving, yelled out that "we have another route to cover."  Williams filed the appropriate form to leave and clocked out, with Moore shadowing Williams's every step. This is but another shocking example of Moore's unabated and unchecked racial prejudice, relentless hostility, harassment, deliberate retaliation, and violation of Williams's civil rights and rights as an employee of the post office.

ee.      On February 17, 2021, in another example of retaliation and harassment Williams was not paid for the Act of Nature Leave for the recent ice/snowstorm in Harris and surrounding counties, even after operations approved administrative pay for every other postal worker in the area.  Williams showed up to work as requested on February 17, 2021, and signed in a list and a group text message during the time as power was off.   Also, Moore's replacement is still harassing Williams, continuing with the harassment started by Moore, despite that Moore no longer works for the USPS station in Seabrook.

ff.      On Thursday, February 25, 2021, Larry Moore called the station after hours at around 5:00 p.m.  Moore is aware that Williams, as the closing supervisor,  closes the office on Thursdays and that Williams is on the phone returning online inquiries phone calls around closing time.   Moreover, ever since the Agency issued its Final Decision in Williams's EEOC actions before that tribunal, Williams is now being harassed and tormented by supervisor Priya

Amin and replacement Postmaster Anthony Jones on a daily basis. Hence, the hostile work environment and reprisals against Williams are allowed to continue without intervention or any relief provided by defendant USPS.

17.     Williams also was diagnosed with stage 4 throat cancer in 2010.     His treatment consisted of 64 radiation treatments, 3 chemotherapy treatments and 2 surgeries from 2010 to 2011.    Williams was released in 2011 with the caution that the cancer could resurface at any time over the following five years.  He went to semiannual appointments from 2011 and through 2016.     This was a difficult period in Williams' life, as he almost lost his life and when through serious treatment, with multiple possible side effects.   Moore, who knew of Williams cancer treatment and recovery from the initial interview and throughout Williams' employment, was constantly taunting him through applying the possible side effects to Williams' work.  Moore was teasing, making fun and harassing Williams about his cancer by attacking his memory.    The radiation from Williams' cancer treatment has the possibility of memory loss as a side effect.   Moore was using this by constantly claiming that Williams had memory issues and making fun of Williams in front of others at the postal facility.

18.     Defendants also did refuse Williams' requests for overtime, refused to provide Williams with the necessary forms to document his work and/or his time, precluding him from getting his work completed (mail delivered) and leaving him with an overload of mail to deliver. Defendants prevented Williams from delivering mail by curtailing the mail, in an attempt to get Williams in trouble on the grounds of failure to

follow instructions.  The overload of mail that was  not been delivered was then given to other postal carriers, intentionally creating overtime for those carriers.   In some instances, the carriers assigned to complete Williams' work were not paid for their time. All of these actions were done in an attempt not only to get Williams in trouble, but also to force him to take a leave without pay.

19.   These continual actions of the Defendants which were directed solely at Williams and no other postal carrier, regardless of their race or nationality,  created a hostile work environment, anxiety, emotional trauma and post-traumatic stress for Williams was forced into taking  time off work.   Due to having to take this time off work, Williams was forced into using all of his vacation and sick leave.  The continual actions of Defendants created an unbearably toxic and hostile work environment, causing serious injury and harm to Williams.

20.   Ever since Williams began his employment with Defendants at the Seabrook Post Office in July 2017, under the supervision of Postmaster Larry Moore (hereinafter "Moore"),   Williams has suffered a continuing course of conduct of intentional and knowingly racial discrimination and retaliation in his employment at USPS that created a hostile work environment based on his race and in retaliation for the four complaints he has made against Defendants.   On Williams second day of work at the Seabrook office, Moore went out to intercept Williams on his route, driving his personal black GMC truck, and verbally assaulted Williams complaining that he should

have been further along on the route, and then when he left he burned rubber when he drove off, saying he was going to deliver the mail himself.

21.    Moore intentionally discriminated against Williams based upon his race, African American, and treated Williams in a disparate manner from his co-workers similarly situated of varying nationalities and races.   Moore followed only the African American employees on their postal route, refused to give the forms requested by Williams, gave his work to others, caused his work to accumulate to get him in trouble, laugh, ridicule and threaten, privately and in front of the other postal employees.  After Williams filed numerous USPS internal grievances, and four EECO complaints, Moore's retaliation against Williams increased after each internal complaint and after each of the preceding EEOC complaint.   Moore's criticizing and verbal assaults to and about Williams's work performance rose to such a level that it was causing serious emotional and physical injuries to Williams

22.     Moore's harassment of Williams also included him standing inches from Williams' face in an aggressive and threatening manner, demanding answers, screaming commands at Williams, threatening him and berating and belittling him in front of the other employees, as well as in public at the Valero gas station.

### IV.    <u>CAUSES OF ACTION</u>

### A. RESPONDEAT SUPERIOR

23.   Williams hereby realleges and incorporates the contents of paragraphs 1 through 30 as if fully set forth at length herein verbatim.

24. Williams is informed and believes, and thereon alleges, that during all relevant times mentioned herein, Moore was in the course and scope of his employment with Defendants, at all times relevant and material herein.  Therefore, Defendant USPS is vicariously liable for the acts and omissions of their employees and agents, who are employed by or in an agency or contractual relationship with said Defendant.  Any and all of the conduct and actions described in this lawsuit occurred during the course and scope of Defendant's USPS employment, agency relationship, and/or contractual relationship with said United States Postal Service.  As such, Williams hereby affirmatively pleads and invokes the doctrine of agency, ostensible agency, Respondent Superior, and/or agency by estoppel with respect to that relationship.

## B.  VIOLATIONS OF THE EQUAL EMPLOYMENT OPPORTUNITY ACT DISCRIMINATION BASED UPON RACE

25.     Williams hereby realleges and incorporates the contents of paragraphs 1 through 30 as if fully set forth at length herein verbatim.

26.     Defendant United States Postal Service, through its owners, managers, servants, employees, supervisors, agents, and/or agents acting individually, jointly, and/or severally, engaged in a pattern and practice of unlawful Title VII Civil Rights Act 42 U.S.C. § 2000e-5(f)(3), *et. seq.* Defendants did discriminate against Williams by subjecting him to extreme discriminatory actions based upon of his race as an African America, in violation of Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000e-5(f)(3), *et. seq.*

Defendants did not treat other employer's Williams hereby invokes the rights and remedies of Title VII Civil Rights Act 42 U.S.C. § 2000e-5(f)(3), *et. seq.*, as Williams is of the class of citizens this statute is enacted to protect.

27.     Williams affirmatively pleads that Defendant has violated the Title VII Civil Rights Act 42 U.S.C. § 2000e-5(f)(3), *et. seq.* by intentionally discriminating against Plaintiff because of his race African American.     Defendants, through its agents, postmasters, and supervisors, were well aware of Williams' opposition to illegal practices and procedures that violated EEO standards set by defendant USPS and Title VII by Plaintiff's filing EEO complaints against his postmaster at USPS.     Defendant's discriminatory acts include, but are not limited, to the following:

  a.  discriminating against Williams because of his race African American and treated Plaintiff in a disparate manner from co-workers similarly situated, as set forth in the paragraphs herein above.

  b.  Defendant through his agents and postmasters, took adverse employment actions against Williams, including suspending Williams for seven (7) days, and other disciplinary actions that were reprisals designed to harass and retaliate against Williams, and to make Williams' work environment extremely hostile.

  c.  creating a hostile work environment in the form of resentment, harassment, rumors, constant belittling, egregious conduct and

threatening demeanor, humiliation, and unconscionable abusive actions, reprisals, and retaliation; and

d. retaliating against Williams for complaining of disparate treatment and harassing Williams during work hours at the United States Postal Service station in Seabrook.

28.     In perpetrating the above-described actions, Defendant engaged in a continuing and ongoing pattern and practice of unlawful discrimination in violation of Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000e-5(f)(3), *et. seq.* Williams was discriminated against based upon his race African American, and the discrimination was sufficiently pervasive and severe as to interfere with Williams' emotional well-being, altered the conditions of Williams' employment, and created a hostile, intimidating and/or abusive work environment.

29.     Defendant, at all times material and relevant hereto, had actual and/or constructive knowledge of the unlawful and discriminatory conduct described herein.

30.     As a result of the hostile and offensive work environment perpetrated by Defendant, Williams suffered severe emotional distress and mental anguish.

31.     Defendants failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination and retaliatory harassment from the workplace and to prevent it from occurring in the future, as mandated by the Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000e-5(f)(3), *et. seq.*

32.     Williams is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendants have engaged in other discriminatory practices against him which are not yet fully known.  At such time as said discriminatory practices become known to him, Williams will seek leave of Court, if required, to amend his Complaint in that regard.

33.     By the aforesaid acts and/or omissions of Defendants, Williams has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings, front and back pay, attorney's fees, costs of suit, and other pecuniary losses not presently ascertained, for which Williams will seek leave of Court to amend when ascertained.

34.     As a further direct and legal result of the acts and conduct of Defendants, and each of them, as aforesaid, Williams has been caused to and did suffer and continues to suffer from severe emotional and mental distress, anguish, humiliation, embarrassment, shock, pain, discomfort, and anxiety.  Williams has been diagnosed from health care professionals with Major Depression Disorder, Post Traumatic Stress Disorder, Anxiety, and Insomnia which will require further treatment.

35.     Williams has been generally damaged in an amount within the jurisdictional limits of this Court, and will need future medial and psychological treatment of which Defendants should compensate him for in the past, present and future.

36.     Williams is informed and believes, and thereon alleges, that the Defendant, and each of them, by engaging in the aforementioned acts and/or omissions, engaged in willful, malicious, intentional, oppressive, and despicable conduct, and acted with willful and conscious disregard of Williams civil rights, welfare, and safety, thereby justifying an award of compensatory and incidental damages in an amount to be determined at trial.

37.     As a direct and proximate result of Defendant's willful, knowing, intentional, and outrageous discrimination against him, Williams has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; and he has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Williams is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## C.   RETALIATION

38.     Williams hereby realleges and incorporates the contents of paragraphs 1 through 37 as if fully set forth at length herein verbatim.

39.     As alleged herein and in violation of the Title VII of the Civil Rights Act, as amended 42 U.S.C. § 2000e-5(f)(3), *et. seq.*, Defendant, by and through its postmasters, managers, agents, and supervisors, discriminated against and wrongfully retaliated against Williams in reprisal for Williams'  complaints of disparate treatment on account of his race, African American.

40.     By the aforesaid acts and/or omissions of Defendant in violation of the Title VII Civil Rights Act 42 U.S.C. § 2000e-5(f)(3), *et. seq.*, Williams has been directly and

legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorney's fees, costs of suit and other pecuniary losses not presently ascertained, for which Williams will seek leave of Court to amend when ascertained.

41.     As a further direct and legal result of the acts and conduct of Defendant, as aforesaid, Williams has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, shock, pain, discomfort, and anxiety, as well as damages resulting from Moore's failure to provide the CA2 form which is the occupation disease and illness form to cover Williams' health related expenses.  Williams  has suffered damage in an amount no less than $1,500,000.00 The exact nature and extent of said injuries are presently unknown to Williams, who will seek leave of Court to assert the same when they are ascertained.  Williams does not know at this time the exact duration or permanence of said injuries but is informed and believes, and thereon alleges, that some if not all of the injuries are reasonably certain to be permanent in character.

42.     Williams has been generally damaged in an amount within the jurisdictional limits of this Court.

43.     Williams is informed and believes, and thereon alleges, that the Defendant, by engaging in the aforementioned acts and/or omissions, engaged in willful, malicious, intentional, oppressive, and despicable conduct, and acted with willful and conscious

disregard of Plaintiff's civil rights, welfare, and safety, thereby justifying an award of compensatory damages in this matter in the amount of $1,500,000.

### D. DAMAGES

44.     Williams hereby realleges and incorporates by reference the contents of paragraphs 1 through 43 as if fully set forth at length herein verbatim.

45.     As a result of the occurrence hereinabove described, Plaintiff has incurred the following damages as a direct and proximate result of Defendant's discriminatory conduct:

a.     Plaintiff has incurred medical- prescription expenses, and has had to pay out of-pocket for medical/psychological treatment and prescription medications as a result of defendants' discrimination and retaliation;

b.     Plaintiff  has incurred travel expenses gas/Ez tag from having to move further away from the workplace to live with a family member due to incurred medical expenses and loss of pay due to having to take leave without pay and loss of overtime opportunities;

c.     Plaintiff suffered incidental economic damages such as moving expenses, car maintenance, loans, closed bank accounts, Roth retirement savings account closed in an effort to make up the financial difference of lost earnings as a result of having to take leave without pay and loss of overtime opportunities;

d.      Plaintiff suffered and continues to suffer extreme and severe emotional distress and mental anguish as a result of Defendant's conduct;

e.      Plaintiff suffered a loss of income as a direct and proximate result of Defendant's discriminatory and retaliatory actions, as such Plaintiff is entitled to compensatory damages in the form of front pay and back pay.

## V.      <u>CONCLUSION</u>

Moore intentionally discriminated against Williams based upon his race, African American, and treated Williams in a disparate manner from his co-workers similarly situated of varying nationalities and races.   Williams, along with the other African American postal employees, were followed on their postal route by Moore, intimidated, threatened, belittled, harassed, refused to give the forms requested by Williams, gave his work to others, caused his work to accumulate to get him in trouble, laughed at, ridiculed and threaten, both privately and in front of the other postal employees, as well as the general public.   After Williams filed numerous USPS internal grievances, and four EECO complaints, Moore's retaliation against Williams increased after each internal complaint and after each of the preceding EEOC complaint with Moore becoming more aggressive towards Williams.      Additionally, Moore also increasingly refused to provide the requested forms to Williams, accept his doctor's releases back to work, and continued to

cause Williams' mail to accumulate.  Moore strove to get Williams in trouble and went so far as to try to prod and provoke Williams into quitting or engaging with Moore.  Moore did not act this way towards any other employee who were Caucasian, Mexican, or Asian at the Seabrook location.   Moore only treated the African American Employees a discriminatory manner.  Moore openly set the stage of discrimination against the African American employees at the Seabrook location.  Moore has a documented history of discrimination against other African American employees at the Seabrook location. Defendants' continuous discrimination of Williams through the actions of Moore towards Williams, in violations of his rights, rose to such a level that it is still causing serious emotional and physical harm to Williams.

**VI. JURY TRIAL DEMAND**

Plaintiff herein requests a trial by jury.

**VII.    PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Zerric Williams, prays that Defendant, Louis DeJoy, Postmaster General of the UPSP, and the United States Postal Service be served and cited to appear and answer herein and upon final trial hereof, that Plaintiff has a judgment against Defendant United States Postal Service as follows:

      A.      Compensatory and/or General damages in an amount to be proved at trial;

      B.      Incidental and/or special damages in an amount to be proved at trial;

      C.      Attorney's fees;

D.   Costs of suit;

E.   pre-and post-judgment Interest; and

F.   For such other and further relief as the Court deems proper.

Respectfully submitted,

**COLLEEN M. McCLURE**
**ATTORNEY AT LAW**

By: /s/ *Colleen M. McClure*
   Colleen M. McClure
   SBN:  24012121
   1101 Satellite View, Unit 203
   Round Rock, Texas 78665
   Telephone: (281)  440-1625
   Facsimile:  (281)  946-5627
   **colleen.mcclure@att.net**