United States District Court
Southern District of Texas
**ENTERED**
July 09, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ZERRIC L. WILLIAMS,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-1520** |
| | § | |
| **LOUIS DEJOY, Postmaster General,** | § | |
| **UNITED STATES POSTAL SERVICES** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

<u>**MEMORANDUM AND ORDER**</u>

Before the Court is Plaintiff Zerric L. Williams Motion for the Court to reconsider its oral order dismissing certain claims in his First Amended Complaint for failure to exhaust his administrative remedies. Doc. 51. For the reasons below, the motion is **DENIED**.

## I.    BACKGROUND

Plaintiff Zerric L. Williams, an African American postal worker, has been employed by the United States Postal Service ("USPS") since June 2016. Doc. 31 at ¶ 15. This case involves allegations of racial discrimination, retaliation, and harassment spanning multiple periods under different supervisors. Given the complexity of both the factual and procedural history, this section will proceed in three parts: the factual history of the case, the procedural history of each EEOC Complaint Plaintiff has filed, and the procedural history of the instant case.

### A.    FACTUAL HISTORY

Plaintiff's employment at the Seabrook, Texas facility has been marked by three periods of alleged discrimination and retaliation under different supervisors.

1. **2016-2021: Discrimination Under Postmaster Larry Moore (the "2016-2021 events")**

From 2016 through 2021, Williams worked under Postmaster Larry Moore, during which time he alleges systemic racial discrimination and harassment. Doc. 31 at ¶ 17. The earliest documented incident occurred on Williams' second day of work in July 2017, when Moore allegedly intercepted Williams on his mail route, verbally assaulted him about his pace, and "burned rubber" while driving away. Doc. 31 at ¶ 23. Subsequent incidents included physical harassment, such as Moore allegedly jumping on Williams' mail truck and throwing parcels to the ground in November 2017, and stalking Williams on his route in August 2018 to fabricate security violations. *Id*. at ¶ 19(a). The most egregious claim occurred in March 2019 when Moore allegedly swung a ceiling cord tied in a noose-like shape near Williams while making threatening statements. *Id.* Williams filed four formal Equal Employment Opportunity Commission ("EEOC") complaints during this period (Case Nos. 4G-770-0032-18, 4G-770-129-18, 4G-770-0196-18, and 4G-770-0339-18). Doc. 41-3 at 53–56.

2. **February-May 2023: Retaliation Under Postmaster Aimee Policano (the "Spring 2023 events")**

After the initial four EEOC complaints were filed, Williams returned to work under new Postmaster Aimee Policano, who allegedly continued and intensified discriminatory practices. Doc. 31 at ¶ 20. From February through May 2023, Plaintiff alleges that Policano systematically denied Williams overtime opportunities despite his Work Assignment Only (WAO)[1] status and seniority. *Id.* at ¶ 19(f). On February 21, 2023, Plaintiff claims Policano deliberately assigned his

---

[1] "Work Assignment Only" refers to a situation where a letter carrier is assigned to their specific route or assignment and is available to work overtime only on that route. They are not obligated to work overtime on other routes or assignments.

overtime route to another carrier on his day off while refusing to let Williams clock in early despite his presence and readiness to work. Id. at ¶ 19(g). When confronted, Policano allegedly admitted this was retaliation for Williams having criticized her in front of a union representative days earlier. Id. at ¶ 19(h). Plaintiff asserts that he filed Article 8 grievances (union-led arbitration claims) for some of the discrimination he faced during this period. *Id*. at ¶¶ 19(r), 20.

During this time, Williams filed another EEOC complaint on March 5, 2023, for claims relating to events in February 2023 (No. 4G-770-0180-23). Doc. 41-3 at 53.

3. **June-November 2023: Escalating Harassment and Forged Documents (hereby referred to as the "Fall 2023 events")**

The discrimination allegedly escalated in mid-to-late 2023 with more brazen violations. In June 2023, Policano allegedly assigned clerks to deliver Williams' route mail—an alleged cross-craft violation[2]—while continuing to withhold his entitled overtime. *Id*. at ¶ 19(s). That September, Policano allegedly forged Williams' signature on a leave request form and publicly belittled him with accusations of laziness. *Id.* at ¶¶ 20(i), 25(d). The harassment culminated in October 2023 when, after Williams filed another grievance, Policano allegedly mandated all carriers work until the last minute of their shifts specifically to target him. *Id.* at ¶ 20(j).

During this time, Williams filed his sixth EEOC Complaint on August 3, 2023 (4G-770-0363-23). Doc. 41-3 at 53.

**B. EEOC PROCEDURAL HISTORY**

---

[2] A cross-craft violation occurs when management assigns employees to work outside of their designated craft (job category) in a way that violates the collective bargaining agreement. These violations often involve directing employees to perform duties that are specifically assigned to another craft.

EEOC complaints are filed under federal anti-discrimination laws and involve an administrative process. The Title VII administrative exhaustion process begins when an employee reports alleged discrimination to an EEO counselor. 29 C.F.R. § 1614.105(a)(1). Following counseling that may include informal resolution attempts, the employee may file a formal complaint with the agency's EEO office if the matter remains unresolved. 29 C.F.R. § 1614.106. The agency must then investigate and provide the employee with a complete investigative file. 29 C.F.R. § 1614.106(e)(2). At this juncture, the employee may choose amongst a variety of remedies: either request an immediate final agency decision or opt for a hearing before an EEOC administrative judge.

Plaintiff Williams filed six EEOC complaints between 2017 and 2024. Doc. 41-3 at 53. The procedural history of each is addressed in chronological order.

### I.    Complaint No. 4G-770-0032-18

Initiated on November 13, 2017, this informal complaint alleged racial discrimination by Postmaster Larry Moore during the 2016-2021 period. Doc. 31 at ¶ 17. The complaint specifically referenced an incident in November 2017 when Moore allegedly "jumped on the back of [Plaintiff's] mail truck and threw all parcels onto the ground in an act of humiliation." *Id.* ¶ 19(a). After referral to the EEOC's mediation program, the parties resolved the matter through a confidential settlement agreement, and the complaint closed on February 6, 2018. Doc. 41-3 at 53.

### II.    Complaint No. 4G-770-129-18

Initiated around March 2018, this complaint similarly alleged racial discrimination and harassment by Moore during the 2016-2021 period. *Id.*; Doc. 31 at ¶ 17. The complaint expanded upon the first filing by adding retaliation claims. *Id.* The matter concluded through mediation, with closure occurring on June 1, 2018. Doc. 41-3 at 53.

### III.     Complaint No. 4G-770-0196-18

The third informal complaint was initiated on or around May 2018, again alleging racial discrimination by Moore during the 2016-2021 timeframe. *Id.* The matter resolved through mediation and closed on August 16, 2018. *Id.*

### IV.     Complaint No. 4G-770-0339-18

Initiated on or about September 26, 2018, this complaint contained particularly egregious allegations against Moore, including that he swung a ceiling cord tied in a noose-like shape near Plaintiff while making threatening statements. Doc. 41-3 at 54-56. The complaint also challenged two seven-day suspensions Plaintiff received. *Id.*

The case was initially referred to mediation. *Id.* at 55. However, when mediation resulted in no agreement, Plaintiff was given his right-to-sue letter (referred to as "Notice of Right to File") on December 21, 2018. *Id* at 57. Plaintiff filed his formal complaint on January 11, 2019. *Id.* at 53. On February 11, 2021 the Final Agency Decision ("FAD") was issued on the merits. *Id.* at 58.

### V.     Complaint No. 4G-770-0180-23

This complaint, initiated on March 5, 2023, alleged retaliation by Postmaster Aimee Policano during Spring 2023. Doc. 40-1 at 1-8. The formal complaint, filed August 7, 2023, claimed improper duty assignments and denial of overtime opportunities. *Id.* After failed mediation and issuance of a right-to-sue letter on June 2, 2023, the agency dismissed the complaint on September 5, 2023 for procedural deficiencies including untimely filing. *Id.*; 29 C.F.R. § 1614.107(a)(1)-(2) (2023). Plaintiff's subsequent appeal to the Office of Federal Operations proved unsuccessful, and the EEOC closed the complaint on March 5, 2023. Doc. 40-1 at 64.

On June 12, 2024, Plaintiff filed a new case in the Southern District of Texas before Judge Ewing Werlein. *See Williams v. USPS-Postal Services*, No. 4:24-cv-2233 (S.D. Tex. 2024). That

case, focused on grievances and claims that occurred between February 1, 2023 and May 4, 2023 contains heavy overlap between the claims that were brought by Williams in EEOC complaint 4G-770-0180-23. Doc. 1 at 6-14, *Williams v. USPS-Postal Services*, No. 4:24-cv-2233 (S.D. Tex. 2024). However, Williams did not refer to 4G-770-0180-23 in that complaint. Instead, Williams primarily referred to 4G-770-0339-18, the complaint that exclusively referred to claims that occurred between 2016 and 2021, writing that it was "the basis of this lawsuit." Doc. No. 1 at 6, *Williams v. USPS-Postal Services*, No. 4:24-cv-2233 (S.D. Tex. 2024).

On October 29, 2024, after Plaintiff failed to serve summons on Defendant within 90 days of filing the complaint, the Honorable Ewing Werlein dismissed 4:24-cv-02233 without prejudice for want of prosecution. Doc. 7, *Williams v. USPS-Postal Services*, No. 4:24-cv-2233 (S.D. Tex. 2024).

## VI.    Complaint No. 4G-770-0363-23

Initiated August 3, 2023, this complaint alleged retaliation and disability discrimination by Policano during Fall 2023. Doc. 61 at 14-15. The formal complaint, filed September 20, 2023, included claims about harassment, improper work hour reductions, and forced early clock-outs. *Id.* An amended complaint was later filed on October 23, 2023 to include new allegations of discrimination that had occurred since the filing of the first complaint. Doc, 61 at 15.

On February 16, 2024, the agency released its "Report of Investigation." Doc. 61 at 11. On that same day, Plaintiff requested a hearing before an administrative judge to resolve his claims. *Id*. The case was assigned to the Houston District Office of the EEOC under docket number 460-2024-00093X before EEOC Administrative Law Judge Nancy Graham ("ALJ Graham"). Doc. 41-2 at 1. While a hearing was initially scheduled in the case, the hearing never occurred. *Id*. On August 20, 2024 ALJ Graham issued a Final Agency Decision titled ""Corrected Order Dismissing

Hearing Request and Hearing Case With Prejudice Due to Pending Federal Lawsuit." *Id.* Specifically, ALJ Graham stated that:

> "Notice is hereby given that the above-captioned hearing case is DISMISSED WITH PREJUDICE pursuant to Complainant's request to withdraw his hearing request because of a pending federal court suit covering allegations of harassment and retaliation during the same period as the instant complaint. The withdrawal request for this hearing case is reflected in the new procedural election that Complainant filed via email from his attorney who also filed the pending suit on Complainant's behalf in federal district court. That same attorney notified the undersigned Judge that his most recent federal complaint may be combined with another federal complaint to address all discrimination claims of this Complainant. Because the Complainant has elected federal court as the forum to pursue the instant discrimination complaint against the Agency, the Commission is without jurisdiction to hear this complaint or otherwise render a decision on the merits of it. Hence*, dismissal of the hearing request upon request of Complainant's attorney is appropriate."*

*Id.* The administrative dismissal resulted directly from a written withdrawal request submitted by Plaintiff's counsel, Colleen McClure, who voluntarily sought cancellation of the scheduled EEOC hearing. *Id.*; *see also* Doc. 61 at 10 (filed withdrawal request captioned "WITHDRAWAL Zeric Williams v. DeJoy EEOC No. 460-2024-00093x").

ALJ Graham's dismissal order references two distinct federal actions. First, she identifies the "pending federal court suit covering allegations of harassment and retaliation during the same period as the instant complaint," later termed "[Plaintiff's] most recent federal complaint." *Id.* This

description unequivocally refers to *Williams v. USPS-Postal Service*, No. 4:24-cv-02233 (S.D. Tex. filed Sept. 26, 2023), which exclusively addressed 2023 incidents. *See* Compl., Doc. 1, *Williams v. USPS-Postal Service*, No. 4:24-cv-02233 (S.D. Tex. Sept. 26, 2023).

Second, ALJ Graham's order briefly mentions "another federal complaint" that Ms. McClure suggested might consolidate with the *Williams* action to resolve all pending discrimination claims. Doc. 41-2 at 1. This passing reference can only denote the instant matter (No. 21-cv-01520).

 Plaintiff subsequently mischaracterized the dismissal's purpose in an October 17, 2024 filing before Judge Werlein, asserting the EEOC matter had been dismissed "to join the case into...21-cv-01520." Doc. 6, *Williams v. USPS-Postal Service*, No. 4:24-cv-02233 (S.D. Tex. Oct. 17, 2024). This representation contradicted ALJ Graham's explicit rationale - that dismissal was compelled by the pendency of No. 4:24-cv-02233, not any anticipated consolidation.

This Court remained uninformed about any consolidation plans until February 20, 2025, when Plaintiff moved to amend his complaint in this action. Doc. 31. The record thus confirms this purely procedural termination was both initiated by Plaintiff's counsel and premised solely on the existence of the parallel *Williams* litigation. While a contemplated joinder with the instant case may have been referenced by ALJ Graham, it certainly was not the basis for dismissal.

### C.  PROCEDURAL HISTORY OF THE INSTANT CASE (21-CV-01520)

The instant action was initiated with the filing of Plaintiff's original complaint on May 7, 2021, which grounded its allegations exclusively in EEOC Complaint No. 4G-770-0339-18 concerning claimed discriminatory conduct by Postmaster Larry Moore spanning the 2016-2021 period. Doc. 1. Defendant filed its responsive pleading on May 17, 2021. Doc. 13.

On July 21, 2022, Plaintiff filed a "Notice of a Chapter 13 Bankruptcy Filing".[3] Doc. 25. The Court stayed the case pursuant to 11 U.S.C. § 362 on the same day. Doc. 26. The automatic stay remained in continuous effect until December 13, 2024, when Plaintiff notified the Court that the bankruptcy court had terminated the stay as of December 4, 2024. *See* Doc. 27. This Court formally reinstated the case to its active docket on December 18, 2024. *See* Doc. 28.

On February 20, 2025, Plaintiff moved for leave to file an amended complaint, representing that the proposed amendments would merely supplement and support the existing claims. Doc. 31. Following Defendant's notice of non-opposition, the Court granted the motion, and Plaintiff filed his First Amended Complaint as the operative pleading. Doc. 35; Doc. 36.

However, contrary to Plaintiff's assertion, the First Amended Complaint represented a fundamental transformation of Plaintiff's case rather than a mere supplementation of facts. A comparative analysis of the pleadings reveals two significant shifts in Plaintiff's litigation strategy. First, the amended pleading substantially altered the focus of the discrimination claims, transitioning from allegations primarily against Larry Moore (mentioned forty-one times in the original complaint compared to just eleven references in the amended version) to new allegations targeting Aimee Policano (seventy-seven mentions). *Compare* Compl., Doc. 1 with First Am. Compl., Doc. 31. Second, while the original pleading centered on events occurring between 2016-2021, the amended version eliminated this framework entirely, replacing it with claims arising from alleged misconduct during Spring and Fall 2023. *See* First Am. Compl., Doc. 31; *cf.* Compl., Doc. 1. This complete restructuring demonstrated that Plaintiff sought not to bolster existing

---

[3] As the Court will expand on later in the opinion, an automatic stay in bankruptcy proceeding only applies to actions against the debtor, not to actions by the debtor. *See* 11 U.S.C. §362(a) (an automatic stay, when applicable, stays only "the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor. . .").

claims with supporting facts, but rather to fundamentally redefine the nature and scope of the litigation. *Compare Williams v. USPS*, No. 4:21-cv-1520, Doc. 36 (S.D. Tex. filed May 7, 2021) with *Williams v. USPS-Postal Service*, No. 4:24-cv-02233, Doc. 1 (S.D. Tex. filed June 12, 2024).

Defendant responded to these substantive changes by filing a Motion to Dismiss on March 27, 2025, advancing three independent legal grounds for rejection of the amended pleading. Doc. 40. The motion argued that the new claims were procedurally barred because they duplicated matters already dismissed in the case before Judge Werlein, failed to satisfy Title VII's administrative exhaustion requirements, and were untimely filed beyond the ninety-day window for amendments following receipt of a right-to-sue notice. *Id*. After full consideration of the parties' briefing and oral arguments, the Court issued its April 25, 2025 order dismissing the First Amended Complaint without prejudice, while permitting Plaintiff an opportunity to file a proper amended pleading that would cure the identified deficiencies. *See* Minute Entry, Apr. 25, 2025. Plaintiff's subsequent Motion for Reconsideration, filed May 15, 2025, now seeks reinstatement of the dismissed pleading. Doc. 51.

## II.  STANDARD OF REVIEW

### A.  Motions for Reconsiderations

Relief under Rule 59(e) is an "extraordinary remedy that should be granted sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). The Fifth Circuit has established that reconsideration may be granted only where the movant demonstrates: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence that could not have been discovered earlier through the exercise of due diligence; or (3) the need to correct a clear error of law or fact to prevent manifest injustice. Fed. R. Civ. P. 59(e); *Ross v. Marshall,* 426 F.3d 745, 763 (5th Cir. 2005).

Notably, Rule 59(e) motions cannot be used to relitigate issues already decided or to advance arguments that could have been raised earlier. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986)). The party seeking reconsideration bears a "high burden" to show that extraordinary circumstances justify revisiting the Court's prior decision. *United States v. Salinas*, 665 F.Supp.2d 717, 720 (W.D. Tex. 2009).

### B. Title VII Cases

Title VII mandates that employees fully exhaust administrative remedies with the EEOC before seeking judicial relief. *Taylor v. Books A Million, Inc*., 296 F.3d 376, 378-79 (5th Cir. 2002) (explaining that courts may entertain a Title VII claim only if the aggrieved party has exhausted her administrative remedies). This exhaustion requirement serves as a condition precedent to filing suit, necessitating that a plaintiff first file a formal charge of discrimination with the EEOC and obtain a "Notice of Right to Sue" letter. 42 U.S.C. § 2000e-5(e)(1), (f)(1); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*; McClain v. Lufkin Indus., Inc.,* 519 F.3d 264, 273 (5th Cir. 2008) ("[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation").

A plaintiff, however, need not await a final agency decision before pursuing a Title VII claim in federal court. Under EEOC regulations, a complainant may file a civil action under the following circumstances:

> "(a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;

(b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken;

 (c) Within 90 days of receipt of the Commission's final decision on an appeal; or

(d) After 180 days from the date of filing an appeal with the Commission if there has been no final decision by the Commission."

29 C.F.R. § 1614.407.  *See* 42 U.S.C. § 2000e-16(c).

A "charge" under Title VII is formally initiated when a plaintiff submits a signed, written complaint alleging unlawful discrimination, which triggers the EEOC's investigative process. This document is distinct from the initial contact with the EEOC. *Stewart v. Iancu*, 912 F.3d 693 (4th Cir. 2019) (finding that the phrase "initial charge" as it is referred to in 42 U.S.C. §2000e-16(c) refers to the "formal administrative complaint of discrimination and retaliation"), *Owens v. Dall. Cty. Cmty. Coll. Dist.*, 793 F. App'x 298 (5th Cir. 2019) (EEOC intake questionnaire does not typically qualify as the charge.  The deadlines under 29 C.F.R. § 1614.407 are calculated from the filing date of this formal complaint. *Id.*

After filing a charge with the EEOC, a plaintiff must receive a "right-to-sue" or "Notice of Right to File" letter before filing a complaint with the district court. *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) ("[r]eceipt of an EEOC right-to-sue letter is a prerequisite to filing suit under Title VII). *See Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) (stating after Plaintiff's files a formal charge, the EEOC will investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action). If the EEOC does not issue a right-to-sue letter within 180 days after the charge of discrimination is filed, the plaintiff may request such a letter. 29 C.F.R. § 1601.28(a).

"Final action" as referred to in 29 C.F.R. § 1614.407 means either "(a) adoption by the relevant government agency of the EEO counselor's final report" or "(b) a final decision by the EEOC, if the claimant appeals to the EEOC." *Wilkerson v. Snow*, Civil Action No. 3:00-CV-1470-L, 2003 U.S. Dist. LEXIS 11321 at *16 (N.D. Tex. June 30, 2003); *Martinez v. Dep't of United States Army*, 317 F.3d 511, 512-13 (5th Cir. 2003). A final agency action may take the form of a decision following an administrative hearing or a written Final Agency Decision (FAD).[4] 29 C.F.R. § 1614.110; 29 C.F.R. § 1614.407. After such action, the employee may: (1) accept the agency's decision; (2) appeal to the EEOC's Office of Federal Operations (OFO); (3) seek OFO intervention if the agency fails to comply with ordered relief; or (4) file suit in federal court. *Murchison v. Astrue,* 689 F. Supp. 2d 781, 789 (D. Md. 2010)

The EEOC may dismiss a complaint either on procedural grounds or after a merits review. Procedural dismissals include failures to comply with filing deadlines, *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976), or voluntary withdrawals by the plaintiff. *Travessi v. Saks Fifth Ave. Inc.*, 2004 U.S. Dist. LEXIS 12348 (S.D.N.Y. June 30, 2004) ("there is no question that [defendant' would be entitled to the dismissal of [plaintiff's] complaint if she withdrew her EEOC complaint before the EEOC issued her a right to sue letter"); *Doe v. Odili Techs.*, No. 3:96CV1957(AHN), 1997 U.S. Dist. LEXIS 23268 (D. Conn. May 28, 1997) (exhaustion requirement not satisfied because plaintiff withdrew her complaint); *see also Brown v. City of New York*, 869 F. Supp. 158, 170-171 (S.D.N.Y. 1994) (a request to withdraw charges "mistaken or otherwise" removes jurisdiction from the administrative court).

---

[4] When an agency dismisses an entire complaint under 29 C.F.R. § 1614.107, that dismissal constitutes a final decision. 29 C.F.R. § 1614.110(b).

Critically, only a merits-based EEOC decision satisfies the exhaustion requirement under 29 C.F.R. § 1614.407. A procedural dismissal—whether for untimeliness or voluntary withdrawal—does not constitute exhaustion. *Cade v. Henderson*, No. 01-943, 2001 U.S. Dist. LEXIS 13685, at *12 (E.D. La. Aug. 31, 2001).

## III. ANALYSIS

Plaintiff's Motion for Reconsideration fails to establish any clear error of fact or law that would warrant disturbing this Court's prior ruling.[5] The First Amended Complaint remains substantively deficient for multiple independent reasons, none of which Plaintiff has adequately addressed in his motion.

### A.  Plaintiff Fails to Demonstrate Clear Error of Fact or Law

This Court's April 25, 2025 dismissal order rested on two principal grounds: (1) Plaintiff's failure to administratively exhaust the claims through proper EEOC procedures; and (2) Plaintiff's untimely filing of the amended complaint beyond the ninety-day window following receipt of a right-to-sue notice. *See* Minute Entry, Apr. 25, 2025. Plaintiff's reconsideration motion presents no persuasive argument or newly discovered evidence that calls these conclusions into question.

Plaintiff erroneously asserts that EEOC Complaint No. 4G-770-03630-23[6] serves as the proper and only exhaustion vehicle for his First Amended Complaint's allegations spanning February 1, 2023 through November 1, 2023. This argument suffers from both factual and legal

---

[5] Plaintiff does not point to any intervening changes in law, nor does he point to any newly discovered facts that would compel reconsideration. The Court will thus only analyze whether any clear error of law or fact occurred that would impose a manifest injustice on the Plaintiff.

[6] Plaintiff's Motion for Reconsideration refers to this EEOC Complaint by its EEOC Case Number, 460-2024-0093x. These case numbers are assigned after a Plaintiff requests a hearing. To maintain consistency in this opinion, as well as other briefings, the Court will refer to this case by its EEOC Complaint Number instead, which is 4G-770-0363-23, and encompasses the pendency of the Complaint from the initial contact to the closure of the case.

defects. The administrative record demonstrates that Complaint No. 4G-770-0363-23 addressed only events occurring between June and October 2023, while the February-May 2023 allegations properly belonged to the separate EEOC Complaint No. 4G-770-0180-23. *See* Doc. 41-3 at 61-65. Accordingly, proper exhaustion analysis requires examining both administrative complaints.

> i.    **Exhaustion Status of Complaint No. 4G-770-0180-23 (Spring 2023 Events)**

Before pursuing a lawsuit under Title VII, a plaintiff must first exhaust administrative remedies by submitting a charge of employment discrimination to the EEOC or a state administrative agency. 42 U.S.C. § 2000e-5(e)(1); *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 521 (5th Cir. 2008). The Fifth Circuit has consistently mandated that plaintiffs fulfill this administrative requirement before filing a Title VII claim. *Price v. Choctaw Glove & Safety Co., Inc.*, 459 F.3d 595, 598 (5th Cir. 2006). Exhaustion occurs when the plaintiff files a timely charge with the EEOC and obtains a statutory notice of the right to sue. *Taylor v. Books A Million, Inc.*, 296 F.3d at 379. After the EEOC issues a right-to-sue letter, the plaintiff must file a civil action within 90 days of receiving it; failure to do so forfeits the right to seek relief for the claims outlined in the charge. 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d at 379; *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982).

The administrative record demonstrates Plaintiff's failure to properly exhaust claims related to the Spring 2023 events through EEOC Complaint No. 4G-770-0180-23. Title VII's exhaustion framework requires strict compliance with procedural deadlines, including the mandate that complainants file formal charges within fifteen days of receiving a Notice of Right to File. 29 C.F.R. § 1614.106(b).

Plaintiff initiated contact with the EEOC on March 5, 2023 regarding alleged retaliation and overtime violations. Doc. 41-3 at 62. After failed mediation, the agency issued Plaintiff's Notice of Right to File on June 2, 2023. *Id.* Plaintiff's subsequent delay in filing his formal complaint until August 7, 2023 - sixty-six days after the deadline - constituted a clear procedural default. *Id.* This untimeliness, coupled with failure to state a claim, properly led to the agency's September 5, 2023 procedural dismissal. Doc. 40-1 at 1-8; Doc. 41-3 at 63 (classifying dismissal as "[p]rocedural"). Plaintiff's administrative appeal to the OFO (Appeal No. 2023005281) proved unavailing, leaving the procedural dismissal intact when the EEOC closed the complaint on September 5, 2023. Doc. 41-3 at 63-64.

Because Plaintiff's complaint was dismissed without a review of the merits, Plaintiff did not exhaust his administrative remedies. *Cade v. Henderson*, CIVIL ACTION NO. 01-943 SECTION "E" (3), 2001 U.S. Dist. LEXIS 13685 (E.D. La. Aug. 31, 2001) (EEOC dismissal "on procedural grounds" does not satisfy exhaustion). *Casillas v. Collins*, No. 24-50308, 2025 U.S. App. LEXIS 2720 (5th Cir. Feb. 6, 2025) (affirming a district court decision finding that a petitioner's discrimination claims were unexhausted where an EEOC complaint was procedurally dismissed because petitioner had filed his formal complaint 10 days late).

The Court therefore correctly dismissed all Spring 2023-related claims for failure to exhaust administrative remedies in Complaint No. 4G-770-0180-23.

### i. Exhaustion Status of Complaint No. 4G-770-0363-23 (Fall 2023 Events)

The Court now examines whether Plaintiff properly exhausted administrative remedies for the Fall 2023 allegations through EEOC Complaint No. 4G-770-0363-23, which forms the primary basis for his reconsideration motion. The administrative record reveals the following chronology:

Plaintiff initiated contact with the EEOC on August 3, 2023, alleging retaliation, document forgery, and harassment. Doc. 61 at 14. He filed his formal complaint on September 20, 2023 (Doc. 41-3 at 53), later amending it on October 23, 2023 to incorporate additional October 2023 incidents. Doc. 61 at 15. The investigation concluded with the filing of the Report of Investigation on February 16, 2024. Doc. 61 at 11.

Pursuant to 29 C.F.R. § 1614.106(e)(2), Plaintiff elected on February 16, 2024 to request a hearing before EEOC ALJ Nancy Graham (Hearing Request No. 460-2024-00093X). *Id.* The parties subsequently filed cross-motions for summary judgment in July 2024. *Id.* at 9-10.

Critical to the exhaustion analysis, Plaintiff voluntarily withdrew his hearing request on August 19, 2024, citing a pending federal suit that allegedly covered "allegations of harassment and retaliation during the same period." Doc. 41-2 at 1.  As detailed in the factual section of this opinion, this request referred to the suit filed in Judge Werlein's court, *Williams v. USPS Postal Service*, Case No. 4:24-cv-02233, a case addressing Spring 2023 events unrelated to this EEOC complaint. *See Williams v. USPS Postal Service*, Case No. 4:24-cv-02233, Doc. 1.  ALJ Graham accepted the request, properly dismissed the administrative proceeding with prejudice based on Plaintiff's election to pursue federal litigation. Doc. 41-2 at 1.

Typically, if a final action has not been taken on a federal employee's EEOC charge within 180 days of the filing of the charge, the federal employee may bring a civil action in the federal district court. 29 C.F.R. §1614.407(b). However, this regulatory framework presents two potential timelines for exhaustion:

1. Plaintiffs may file suit after 180 days from the initial charge filing if no final agency action occurs; or

2.  When amended, the 180-day period runs from either the last amendment date or 360 days from the original filing, per 29 C.F.R. § 1614.106(e)(2).

Courts diverge on whether amendments reset the 180-day clock.  *Compare Carrier-Tal v. McHugh*, No. 2:14cv626, 2015 U.S. Dist. LEXIS 196217 at *8 (E.D. Va. Aug. 10, 2015) (confirming that a complainant who amends their EEOC charge is required to wait until either 180 days passed following [their] amendment to [their] charge or 360 days from the filing of [their] initial charge" to file a federal complaint) *with Stewart v. Iancu*, 912 F.3d 693, 702 (4th Cir. 2019) (finding that the requirement that "federal employees [] file a civil action 180 days from the filing of the *initial charge*. . . requires that the 180-day waiting period begin upon the filing of the *first, original* charge"—regardless of any amendment). The first, original charge these courts refer to is the filing of the "formal administrative complaint." *Id.*

To this Court's knowledge, no court in the Fifth Circuit has opined on this issue. However, the Court need not resolve this split because Plaintiff failed to satisfy either standard: his voluntary withdrawal precluded merits review, and he never received the requisite right-to-sue notice before initiating federal litigation. *See* 29 C.F.R. § 1614.407 (enumerating prerequisites for judicial action).

### a.  Violation of Mandatory Claims Processing Rules

The Supreme Court has drawn a distinction between jurisdictional requirements and mandatory claim-processing rules in recent decades. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 503 (2006) (cautioning against conflating jurisdictional limits with substantive elements). While jurisdictional rules define a court's adjudicatory authority, claim-processing rules establish procedural requirements that, though mandatory, do not implicate subject-matter

jurisdiction. *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004); *see also Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) (reinforcing this "stricter divide").

Specifically, the Court has explained that most deadlines function as "quintessential claim-processing rules," ensuring orderly litigation by mandating that parties follow procedural timelines. *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (ruling that a 180-day deadline for filing a notice of appeal was non-jurisdictional). These rules do not deprive a court of its adjudicatory power, even when phrased in obligatory language. *United States v. Kwai Fun Wong*, 575 U.S. 402, 410 (2015) (holding that time limits under the Federal Tort Claims Act were not jurisdictional). However, they remain "mandatory" rules. While cases that violate such rules may not be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), they can be considered dismissed under Federal Rule of Civil Procedure 12(b)(6). Furthermore, violations of mandatory claims-processing rules may also be "cured after the action has begun," provided that the error is curable. *Vankempen v. McDonnell Douglas Corp.*, 923 F. Supp. 146, 149-50 (E.D. Mo. 1996) (concluding that receipt of a right-to-sue letter is a condition precedent, as opposed to a jurisdictional prerequisite, and therefore the requirement "may be cured after the action has begun").

The 180-day waiting period established by 42 U.S.C. § 2000e-16(c) operates as a mandatory claim-processing rule rather than a jurisdictional limitation. *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019); *Norris v. Wolf*, No. 20-cv-20179, 2020 U.S. Dist. LEXIS 190764, at *15 (S.D. Fla. Oct. 15, 2020). As a corollary, so too are the other deadlines in 29 C.F.R. § 1614.407, including the 90 day deadline once a plaintiff receives a right-to-sue letter. For our purposes, this means that possible violations of the timelines in 29 C.F.R. § 1614.407 may be considered in a 12(b)(6) motion to dismiss and may also be cured after the action has begun.

Despite Plaintiff's contentions otherwise, the fact these deadlines are not jurisdictional does not render them meaningless. As Plaintiff readily admits in his Motion for Reconsideration, even if a requirement is not "jurisdictional," it can still be a "mandatory" claims-processing rule. Doc. 51 at 6.

The administrative record demonstrates Plaintiff's multiple violations of these mandatory procedural requirements regarding EEOC Complaint No. 4G-770-0363-23. Plaintiff initiated the formal complaint process on September 20, 2023 (Doc. 41-3 at 53) and filed an amended complaint on October 23, 2023 (Doc. 61 at 15). However, his First Amended Complaint in the instant action - which first asserted claims from this EEOC complaint - was not filed until March 3, 2025, some 497 to 530 days from both the original and amended formal complaints. *Id.*

While this timing might superficially appear to comply with the 180-day waiting period, the regulatory framework imposes more nuanced requirements. Under 29 C.F.R. § 1614.407 and 42 U.S.C. § 2000e-16(c), federal employees may initiate civil actions either: (1) within 90 days of receiving final agency action; or (2) after 180 days from filing the initial charge *if no final action has occurred*. The critical distinction here is that the 180-day waiting period becomes moot once the agency issues a final decision, at which point the 90-day filing clock begins.

Plaintiff's case presents a textbook violation of these requirements. The administrative proceeding concluded with ALJ Graham's August 20, 2024 Final Agency Decision (Doc. 41-2 at 1), which started the 90-day filing period. Plaintiff's March 3, 2025 submission missed this deadline by 105 days, despite his acknowledgment of receiving the decision on August 20, 2024. Doc. 61 at 4. This untimeliness constitutes an incurable procedural defect that properly resulted in dismissal under Rule 12(b)(6).

Plaintiff's final contention on this issue—that equitable tolling should excuse his untimely filing due to the bankruptcy stay—fails as both legally and factually unsupported. The Fifth Circuit maintains stringent requirements for equitable tolling, demanding both extraordinary circumstances and demonstrated due diligence. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 880 (5th Cir. 2003). Plaintiff satisfies neither prong of this test.

Plaintiff's reliance on the bankruptcy stay is misplaced from the outset. On July 21, 2022, Plaintiff submitted a "Suggestion of Bankruptcy," misleadingly asserting that "there is an automatic stay placed on the above-entitled and numbered cause." Doc. 25. This was flatly incorrect. As Judge Werlein correctly noted in a related case, the automatic stay under 11 U.S.C. § 362(a) applies only to actions *against* the debtor, not those *brought by* the debtor. Doc. 40-3 at 3; *see* 11 U.S.C. §362(a) (an automatic stay, when applicable, stays only "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title"). Here, Plaintiff is the initiating party in this litigation; the stay had no legal effect on claims that Plaintiff brought against another party. *See In re: Zerric Williams*, No. 22-32028 (Bankr. S.D. Tex).

Even assuming *arguendo* that the stay applied, Plaintiff's conduct would still preclude equitable relief. Tolling does not permit litigants to sit on their rights and then invoke procedural confusion as an excuse for delay. Plaintiff waited years before seeking clarification on the stay's applicability, only moving to lift it on December 18, 2024, when convenient for his arguments.[7]

---

[7]     On December 13, 2024, Plaintiff notified this Court that he had "filed a Motion to Lift the Automatic Stay on his Chapter 13 bankruptcy on October 11, 2024" regarding this case (21-cv-

Such opportunistic timing underscores a lack of diligence, not a good-faith effort to comply with deadlines. Most troubling is Plaintiff's attempt to mislead this Court—first by wrongly asserting that the stay applied, and now by trying to exploit that same error to reset his statutory deadlines. The bankruptcy stay was never an impediment to Plaintiff's claims, and his insistence otherwise is factually and legally untenable. Courts do not toll deadlines based on self-created confusion, much less on misrepresentations to the tribunal.

Plaintiff's First Amended Complaint was thus in violation of the 90 day filing deadline of 29 C.F.R. § 1614.407, and was properly dismissed under FRCP 12(b)(6) as untimely. This violation, while non-jurisdictional, is not curable. Upon Plaintiff's request, the final agency decision dismissed Plaintiff's claim *with* prejudice. Doc. 41-2 at 1. Plaintiff's 90-day deadline to file his federal complaint expired long ago, and there are no opportunities to toll any amount of that time.

Plaintiff's First Amended Complaint was properly dismissed, and Plaintiff's Motion for Reconsideration is therefore **DENIED.**

---

01520) and that the motion was "Granted on December 4, 2024." Doc. 27. This representation was factually incorrect.

A review of Plaintiff's bankruptcy records reveals that Plaintiff sought authorization only to proceed with "the lawsuit under cause number 4:24-cv-02233 entitled *Zerric Williams v. USPS*" - the case before Judge Werlein. Doc. 62 at 1, *In re: Zerric Williams*, No. 22-32028 (Bankr. S.D. Tex, filed Oct. 11, 2024). Bankruptcy Judge Christopher Lopez's Order expressly limited relief to "the lawsuit pending in the U.S. District Court for the Southern District of Texas under cause number 4:24-cv-02233." Doc. 63, *In re: Zerric Williams*, No. 22-32028 (Bankr. S.D. Tex, filed Dec. 4, 2024). Neither Plaintiff's motion nor the bankruptcy court's order mentioned the instant case (4:24-cv-01520). Thus, Plaintiff's assertion that the bankruptcy court lifted a stay in this case was doubly misleading:

1. No stay ever applied to this action, as the automatic stay under 11 U.S.C. § 362(a) protects debtors from claims against them - not claims they initiate; and
2. The bankruptcy court's order expressly addressed only a different case (4:24-cv-02233), making Plaintiff's representation to this Court factually inaccurate.

### b.   Procedural Dismissals Do Not Qualify as Exhaustion

Even assuming *arguendo* that Plaintiff's claims were timely filed, they would still fail for lack of proper exhaustion.

ALJ Graham's dismissal order unambiguously characterized the termination as procedural, stating that "the Commission is without jurisdiction to hear this complaint or otherwise render a decision on the merits of it." Doc. 41-2 at 1. ALJ Graham's dismissal was appropriate, both because of Plaintiff's request that she do so, and because of the long-standing precedent that an employee's decision to pursue Title VII claims in federal court mandates dismissal of the EEOC complaint and "precludes the EEOC from entertaining an appeal of that dismissal." *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 304 n.7 (5th Cir. 2008); *see also* 29 C.F.R. §§ 1614.107(a)(3), 1614.409. Acting on information and belief from Plaintiff, ALJ Graham clearly believed that continuing the administrative action would violate Fifth Circuit precedent.[8]

Plaintiff voluntarily sought dismissal before obtaining a right-to-sue letter, contrary to 29 C.F.R. § 1601.28(a)-(b). If the EEOC determines that the complaint has a reasonable basis, it will issue a right-to-sue letter to the plaintiff. 29 C.F.R. § 1601.28(b). If the EEOC does

---

[8] Plaintiff represented to ALJ Graham that the reason to withdraw his hearing request in 4G-770-0363-23 (covering the events of Fall 2023) was because of a "pending federal court suit covering allegations of harassment and retaliation during the same period as the instant complaint." Doc. 41-2 at 1. However, as has been explained at length, this "pending federal court suit" was a reference to 4:24-cv-02233 in Judge Werlein's court. 4:24-cv-02233 did not concern the events of Fall 2023 or those events raised in 4G-770-0363-23. Instead, 4:24-cv-02233 addressed the events of Spring 2023, and most closely aligned with EEOC Complaint No. 4G-770-0180-23 instead. Doc. 1, *Williams v. USPS-Postal Services*, No. 4:24-cv-2233 (S.D. Tex. 2024). At the time that Plaintiff made his voluntary dismissal request to ALJ Graham, there was no pending lawsuit that referred or addressed the events of Fall 2023 raised in 4G-770-0363-23. Thus, it seems that Plaintiff had no real basis to advise ALJ Graham that her court was divested of jurisdiction.

not issue a right-to-sue letter within 180 days after the charge of discrimination is filed, the plaintiff may request such a letter. 29 C.F.R. § 1601.28(a). However, if a plaintiff does not request the right-to-sue letter, has not already received one, and requests that the administrative matter be procedurally closed, then he has foreclosed all doors of relief to himself.

Indeed, as several courts across the nation have held, when a claimant has voluntarily (and prematurely) terminated administrative proceedings, the claimant cannot then assert that all administrative remedies have been adequately pursued. *Travessi v. Saks Fifth Ave. Inc.*, 2004 U.S. Dist. LEXIS 12348 (S.D.N.Y. June 30, 2004) ("there is no question that [defendant' would be entitled to the dismissal of [plaintiff's] complaint if she withdrew her EEOC complaint before the EEOC issued her a right to sue letter"); *See Doe v. Odili Techs., Inc.*, 1997 U.S. Dist. LEXIS 23268, No. 3:96CV1957, 1997 WL 317316, at *5 (D.Conn. May 25, 1997) (exhaustion requirement not satisfied because plaintiff withdrew her complaint); *Connelly v. West*, 2001 U.S. Dist. LEXIS 957, No. 98 CV 6924 (RCC), 2001 WL 102350, at *5 (S.D.N.Y. Feb. 7, 2001) (same); *see also Brown v. City of New York*, 869 F. Supp. 158, 170-171 (S.D.N.Y. 1994) (a request to withdraw administrative charges "mistaken or otherwise" may properly result in dismissal of the federal complaint if the claim has not been exhausted).

The administrative record conclusively establishes that Plaintiff never obtained the required right-to-sue letter for EEOC Complaint No. 4G-770-0363-23, as he concedes in his motion (Doc. 51 at 1). This omission proves fatal to his claims. The Fifth Circuit has unequivocally held that receipt of such notice constitutes an indispensable prerequisite for Title VII litigation. *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988). ("[r]eceipt of an EEOC right-to-sue letter is a prerequisite to filing suit under Title VII). Rather than requesting a right-to-sue letter under 29 C.F.R. § 1601.28(a) before seeking dismissal of the administrative

proceedings, Plaintiff prematurely terminated the EEOC process. He then compounded this error by failing to seek reconsideration within the 30-day window prescribed by 29 C.F.R. § 1614.405(a), thereby forfeiting any opportunity for administrative correction.

Plaintiff, without authority, argues that the "US Supreme Court is clear that [not receiving a Right to Sue letter from the EEOC due to the lack of jurisdiction on its part] does not preclude jurisdiction on the part of this court for failure to complete the procedural process which Plaintiff is precluded from completing due to the lack of jurisdiction." Doc. 51-1 at 7. Plaintiff seems to be referring to *Fort Bend Cty. v. Davis*, 587 U.S. 541, 139 S. Ct. 1843 (2019). *Fort Bend Cty.* held only that Title VII's charge filing requirement is a procedural claim-processing rule, applicable and mandatory if timely raised, rather than a jurisdictional requirement that could be raised at any stage of the proceeding. *Id.* at 1846, 1849-51. The Supreme Court has never suggested that such rules cannot support dismissal under Rule 12(b)(6) when properly invoked. Plaintiff's attempt to transform *Fort Bend* into a shield for his procedural defaults finds no support in the case law.[9]

---

[9] Plaintiff also mistakenly asserts that "when the EEOC clearly finds that it does not have jurisdiction, then the US District Court does have jurisdiction." Doc. 51 at 7. Not so. Plaintiff conflates the EEOC's procedural dismissal authority with this Court's subject-matter jurisdiction. The EEOC's determination that it lacks jurisdiction to proceed with an administrative complaint—whether due to parallel litigation, withdrawal, or other procedural grounds—has no bearing on whether a federal court possesses jurisdiction over the underlying claims. Indeed, the federal court must find that it independently has subject matter jurisdiction over a claim. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850 (2019) (holding Title VII's charge-filing requirement is a mandatory claim-processing rule, not jurisdictional); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (emphasizing the distinction between jurisdictional requirements and procedural prerequisites). Moreover, even if the federal court has jurisdiction over the complaint, that does not mean that the mandatory claims processing rules become meaningless. Even if the EEOC declines to adjudicate a complaint, a plaintiff must still satisfy all statutory prerequisites before filing suit, including: receiving a right-to-sue letter (or properly invoking the 180-day waiting period under 29 C.F.R. § 1614.407(b)); filing within 90 days of final agency action (29 C.F.R. § 1614.407(c)); and ensuring the claims in the lawsuit fall within the scope of the EEOC charge. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

In any event, whether it is because of timeliness grounds or because Plaintiff has failed to administratively exhaust his claims, the Court did not err when it dismissed Plaintiff's First Amended Complaint under Rule 12(b)(6). These independent grounds for dismissal remain undisturbed by Plaintiff's arguments for reconsideration.

### B.  Plaintiff Fails to Demonstrate a Manifest Error of Law or Fact

Plaintiff's last attempt at relief is to paint a picture of a client "being denied his due process" because no Court can grant him relief at this juncture. Doc. 51-1 at 7-8.  Plaintiff has repeatedly argued that he is stuck in an administrative Catch 22 in which he cannot proceed with his federal cases because he has not exhausted his remedies with the EEOC, but that he cannot pursue such remedies with the EEOC because they have entered an order that they lack jurisdiction to proceed forward with the hearing due to the pendency of his federal case. *Id*.  He asks the Court to consider granting him relief, if the above-mentioned deficiencies are true, to spare him being caught in an unfair procedural bind. *Id*. at 8. While the Court is sympathetic that Plaintiff is now in this position, his—and his attorney's—decisions throughout the pendency of this litigation are solely to blame for this situation. Plaintiff has been afforded due process. Indeed, he has had opportunities to pursue his administrative claims properly—he just did not do so. Reconsideration is not a vehicle to remedy self-inflicted litigation errors. *See Templet*, 367 F.3d at 479 ("Rule 59(e) is not the proper vehicle for rehashing evidence, legal theories, or arguments"). Plaintiff's claims were procedurally barred due to multiple failures: untimely EEOC filings, voluntary withdrawal of administrative complaints, misrepresentations to the courts, and missed court deadlines—all of which prevented proper exhaustion of remedies. His procedural errors, not any jurisdictional defect, foreclosed his claims, and equitable relief is unwarranted.

First, for the Spring 2023 events, Plaintiff initiated EEOC contact on March 5, 2023, but filed his formal complaint on August 7, 2023—66 days after the 15-day deadline triggered by his June 2, 2023 Notice of Right to File (Doc. 41-3 at 62–63). This untimeliness led to a procedural dismissal under 29 C.F.R. § 1614.107(a)(2) (Doc. 40-1 at 1–8), foreclosing exhaustion. Plaintiff's disregard for mandatory deadlines was not excused and barred his claims as a matter of law. *See Casillas v. Collins*, No. 24-50308, 2025 U.S. App. LEXIS 2720 (5th Cir. Feb. 6, 2025) (affirming dismissal where EEOC complaint was filed 10 days late).

Second, Plaintiff voluntarily withdrew his hearing request for the Fall 2023 events (No. 4G-770-0363-23) on August 19, 2024, *before* obtaining a right-to-sue letter (Doc. 41-2 at 1; Doc. 61 at 10). ALJ Graham's dismissal was explicitly procedural, noting the EEOC lacked jurisdiction due to Plaintiff's election of federal litigation (Doc. 41-2 at 1). By abandoning the administrative process, Plaintiff forfeited exhaustion. *Travessi v. Saks Fifth Ave. Inc.*, 2004 U.S. Dist. LEXIS 12348 (S.D.N.Y. June 30, 2004) (withdrawal precludes exhaustion).

Third, instead of promptly seeking this Court's guidance on consolidation, Plaintiff misrepresented to ALJ Graham that his claims would be consolidated into this action, despite never having filed a motion for consolidation or having even raised the issue with this Court until after the EEOC dismissal. Doc. 41-2 at 1 (relying on Plaintiff's representation that claims "may be combined with another federal complaint"). This premature assurance—made before any judicial approval—locked him into a procedural dead end. Had he sought consolidation formally and earlier, this Court could have assessed its feasibility under Rule 42(a) or, if consolidation was improper, advised him to exhaust administratively. Instead, his assumptions deprived him of both options.

Fourth, Plaintiff did not file his First Amended Complaint until March 3, 2025—105 days after the 90-day deadline under 29 C.F.R. § 1614.407(c). Even assuming equitable tolling applied (which it did not, *see infra*), Plaintiff's delay was inexcusable and independently warranted dismissal. *Martinez v. Dep't of U.S. Army*, 317 F.3d 511, 513–14 (5th Cir. 2003) (strict adherence to deadlines is mandatory).

Fifth, Plaintiff falsely asserted the automatic stay applied to 21-cv-01520 (Doc. 25), despite 11 U.S.C. § 362(a) staying only actions *against* debtors—not those *brought by* them. He compounded this error by claiming the stay was lifted for this case (Doc. 27), when the bankruptcy order expressly addressed only *Williams v. USPS* (No. 4:24-cv-02233) (Doc. 63, *In re: Zerric Williams*, No. 22-32028 (Bankr. S.D. Tex.)).

Sixth, Plaintiff told ALJ Graham her court lacked jurisdiction due to a "pending federal suit" (No. 4:24-cv-02233) (Doc. 41-2 at 1)—but that suit addressed *Spring* 2023 events (EEOC No. 4G-770-0180-23), not the *Fall* 2023 claims in 4G-770-0363-23. This erroneous advice triggered an unnecessary dismissal.

Plaintiff's procedural missteps—whether misrepresentations, missed deadlines, or premature withdrawals—were entirely of his own making. Plaintiff's argument that the Court should now grant him relief despite those mistakes is unavailing. If granted, such relief would create an illogical paradox: if an EEOC dismissal for lack of jurisdiction automatically conferred federal jurisdiction, plaintiffs could bypass exhaustion simply by withdrawing their administrative complaints. Courts have repeatedly rejected such gamesmanship. *See, e.g., Boswell v. Dep't of the Treasury, Office of the Comptroller of the Currency,* 979 F. Supp. 458, 464 (N.D. Tex. 1997*)* ("an administrative exhaustion rule is meaningless if claimants may impede and abandon the administrative process and yet still be heard in the federal courts")

(internal citations omitted). The Court cannot—and will not—grant an extraordinary exception to relieve Plaintiff from procedural mistakes of his own making.

## II.  CONCLUSION

The Plaintiff's Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED**.

 Signed at Houston, Texas on July 9, 2025.

Keith P. Ellison
United States District Judge